Scott W. Wellman, Bar No. 82897
swellman@w-wlaw.com
Scott W. Wellman, Bar No. 175738
abonfa@w-law.com
Chris A. Wellman, Bar No. 304700
cwellman@w-wlaw.com
**WELLMAN & WARREN LLP**
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
Tel: (949) 580-3737
Fax: (949) 580-3738

Attorneys for Plaintiff JAYNE HAINES

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYNE HAINES, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF THE NAVY; UNITED STATES OF AMERICA; JOB OPTIONS, INC.,<br><br>Defendants. | Case No: 3:21-CV-01464-L-KSC<br>Judge: M. James Lorenz<br>Magistrate: Karen S. Crawford<br>Courtroom: 5B<br><br>**PLAINTIFF JAYNE HAINES' SECOND AMENDED COMPLAINT FOR:**<br>1. **NEGLIGENCE**<br>2. **PREMISES LIABILITY**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint filed: 7/29/21 |

Plaintiff Jayne Haines hereby complains and alleges against Defendants United States of America and Job Option, Inc. as follows:

## JURISDICTION AND VENUE

1. Subject matter jurisdiction is proper under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., and pursuant to 28 U.S.C. §1346(b) because the United States of America is a Defendant.

2. Venue is proper in this District under 28 U.S.C. §1391(b)(2) and 28 U.S.C. §1402(b) of the United States Code because the Southern District of California is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

## THE PARTIES

3. Plaintiff Jayne Haines ("Haines") is an individual and is a resident of San Diego County, California.

4. Defendant United States of America is a named defendant.

5. Defendant Job Options Inc. is a nonprofit public benefit corporation in San Diego, California

## STATEMENT OF FACTS

6. MCAS Miramar Commissary (the "Commissary") is owned and operated by the Defense Commissary Agency, a federal agency affiliated with the United States Department of Defense. The Commissary is located at 2661 Monroe Ave., San Diego, CA 92126. On information and belief, defendant Job Options Inc. contracted with United States of America to operate and maintain the Commissary and perform custodial and maintenance duties during the relevant time.

7. On September 16, 2019, Haines was shopping at the Commissary and slipped on an unmarked slippery floor in the aisle.

8. The floor was slippery and there were no warning signs indicating such.

9. When Haines fell, the back left side of her head hit the hard floor.

10. Immediately a cashier named Kelly rushed over to assist Haines. Haines

**SECOND AMENDED COMPLAINT**

could hear the cashier berate another employee and/or contractor of defendants who was at the scene asking him why he did not install a wet floor sign.

11. On information and belief, the cashier and the other employee/contractor were employees and/or contractors and/or agents of Defendants at all relevant times.

12. No warning signs or any other warnings were installed indicating that the floor was slippery.

13. The employees/contractors/agents of the commissary were aware or should have been aware of the dangerous condition but failed to clean up the spill in a reasonable amount of time and failed to warn of the condition in a reasonable amount of time.

14. Defendant had actual or constructive notice of the slippery floor and did not take any action to alleviate the dangerous condition or warn of the dangerous condition.

15. Haines suffered severe trauma to her head due to a laceration at the back of her head as well as other severe injuries.

16. Haines' head was bleeding profusely, and she had an aching head, neck, and back immediately after the fall.

17. Haines was then transported by ambulance to the emergency room at Scripps Memorial Hospital in La Jolla, CA.

18. Upon arrival at the emergency room, Haines was examined, and a scalp laceration repair was performed on her.

19. Haines was administered an injection of lidocaine and epinephrine before the underlying hematoma was then removed from her scalp and interrupted staples were applied on the wound.

20. Haines was then transported to Radiology for a CT scan, which revealed a diagnosis of scalp laceration and scalp hematoma with a closed head injury.

21. Later that evening, Haines was discharged from the emergency room in stable condition and was instructed to return within ten (10) days for removal of the

**SECOND AMENDED COMPLAINT**

staples and further assessment.

22. On September 18, 2019, Haines was examined at Scripps Coastal ("Scripps Coastal") in Solano Beach by her primary care physician's office.

23. The examination stated that her symptoms included: head wound; Scalp Hematoma with staples tender to touch; back pain; left thoracic paraspinous muscles tender to palpitation, right sternocleidomastoid muscle tender to palpitation; neck pain when turning head; tremors; headaches; and a feeling of nervousness and anxiousness since the fall.

24. On September 26, 2019, Haines returned to Scripps Coastal for staple removal and further examination by her primary care physician, Aleksandriya S. Demenko, M.D. ("Dr. Demenko").

25. Haines was diagnosed with post-concussion syndrome as a result of her head injury in addition to suffering from headaches and blurry vision.

26. Over the next few weeks, Haines' symptoms persisted as she continued to experience: overall pain in her head from the laceration; pain in her neck, back, and shoulder blades; and soreness in her jaw.

27. On October 18, 2019, Haines was examined at the Scripps Clinic Anderson Medical Pavilion Neurology by Dr. Ngo, M.D. ("Dr. Ngo"), who administered an MRI and noted a non intractable episodic headache type with residual symptoms consisting of myofascial pain in her neck and shoulder with generalized fatigue.

28. Dr. Ngo, M.D. recommended neck stretching exercises, potential physical therapy if chiropractic manipulations did not improve her pain, and brain rest with a gradual return to prior activities.

29. Throughout October 2019, Haines went to chiropractic treatment for her neck, shoulder, arm, and back pain with Dr. Lamont Loy at Loy Chiropractic Arts, Inc.

30. Despite attending chiropractic treatment, Haines' symptoms did not improve, and worsened, over the course of the next two months.

31. Between November 15, 2019, and November 26, 2019, Haines was

**SECOND AMENDED COMPLAINT**

examined by Dr. Julio Romero, M.D. ("Dr. Romero") at Scripps Coastal, where an X-ray of her cervical spine was administered, which showed retrolisthesis of C5 and C6 and moderate spondylosis at C5 and C6.

32. Dr. Romero ordered an MRI of her neck a referral to orthopedic surgery as retrolisthesis status post slip was diagnosed.

33. On November 26, 2019, Haines was administered an MRI of her cervical spine, revealing cervical spondylosis, discopathy, facet arthropathy, disc spondylotic, disc protrusion and degeneration, and foraminal stenosis.

34. An MRI of her brain on the same day revealed a negative impression and that Haines suffered from tremor of the left hand.

35. On January 7, 2020, Haines was examined by Dr. Ramin Bagheri ("Dr. Bagheri") at the Scripps Carmel Valley Orthopedic Surgery, whose assessment included her complaints of neck and trapezius pain, moderate multilevel cervical degenerative spondylosis, and a limitation of range of motion of the cervical spine.

36. Dr. Bagheri recommended a 6-8 week course of physical therapy and a follow up for cervical trigger point or cervical facet joint injections.

37. From January 2020 to July 2020, Haines continued to receive physical therapy at Evolve Physical Therapy by Kevin Singer, PT, DPT. However, Haines experienced minimal improvement in her pain levels.

38. Intermittently between her physical therapy and chiropractic care, Haines also received care at Create Wellness with Dr. Roya Nikzad ("Dr. Nikzad") from January 2020 to August 2020, where she was administered acupuncture treatments.

39. On June 25, 2020, Haines was again examined by Dr. Bagheri, where she reported a "cracking pain" in her upper back that radiated through her chest, ribs, and shoulder blades in addition to numbness and tingling in her hands and fingers.

40. Dr. Bagheri administered an MRI and an X-ray of Haines' thoracic spine, which revealed radiculopathy of the thoracic region and degeneration of a cervical intervertebral disc.

41. On July 22, 2020, Haines was examined by Dr. Neil Arif Tayyab, M.D. ("Dr. Tayyab") at Girard Orthopedic Surgeons Medical Group, where X-rays were taken and indicated thoracic pain with symptoms of radiculopathy and thoracic spondylosis.

42. On August 12, 2020, following an MRI, Haines was again examined by Dr. Tayyab, whose review of the MRI indicated thoracic radiculopathy, right T7-T8 disc protrusion, thoracic spondylosis, sprain of ligaments of the thoracic spine, other invertebral disc displacement.

43. Dr. Tayyab's medical opinion on August 12, 2020, stated: "the thoracic disc protrusion and mid back symptoms are causally related to her fall which occurred on September 2019. She denies any mid back symptoms prior to the September 2019 injury."

44. As a result of Defendants' breach of their duty, Haines has incurred substantial medical bills.

45. Further, Haines has suffered significant pain and suffering since she is unable to engage in her favorite activities, has difficulty moving around during day to day tasks, and has difficulty standing and sitting for long periods of time.

46. Haines continues to suffer from headaches and persistent pain in her neck, back, and shoulders.

47. As a result of Haines' pain and suffering, she has experienced bouts of depression.

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (By Plaintiff Against All Defendants)

48. Plaintiff incorporates all preceding paragraphs as though fully set forth here.

49. Defendants had a duty to maintain safe premises and to warn about any unsafe conditions that its agents or employees were or should have been aware of.

50. Defendants breached their duty to maintain safe premises by allowing the

6

SECOND AMENDED COMPLAINT

spill to remain on the floor of an aisle for an extended period of time.

51. Defendants breached their duty to warn of unsafe conditions by not posting any signs or other warnings of the spill on the floor.

52. At least two (2) employees/contractors/agents were aware of the spill on the floor and failed to act in a reasonably timely manner to clean the spill.

53. As a direct result of Defendants' negligence, Haines suffered severe injuries, pain, and suffering in addition to substantial financial damage due to medical bills. For these reasons, Plaintiff has been damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## PREMISES LIABILITY
### (By Plaintiff Against All Defendants)

54. Plaintiff incorporates all preceding paragraphs as though fully set forth here.

55. Defendant United States of America owned, operated and controlled the Commissary. Defendant Job Options, Inc. controlled, maintained and operated the Commissary.

56. Defendants failed to maintain the floor of the Commissary adequately by allowing a spill to remain on the floor.

57. Defendants' failure to clean up the spill created an unreasonably unsafe condition.

58. Defendants did not exercise reasonable care to clean up the spill or provide adequate warning of the spill.

59. Plaintiff suffered severe injuries, pain, financial harm, and emotional suffering due to the improperly maintained floor at the Commissary.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For compensatory damages in an amount to be proven at trial;

**SECOND AMENDED COMPLAINT**

2. For punitive damages;

3. For costs of suit herein incurred;

4. For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: May 26, 2022          **WELLMAN & WARREN LLP**

By:/s/Scott Wellman
  Scott W. Wellman
  Anabella Q. Bonfa
  Chris A. Wellman
  Attorneys for Plaintiff JAYNE HAINES